1

**UNITED STATES DISTRICT COURT**

2
**WESTERN DISTRICT OF NEW YORK**

3

4  UNITED STATES OF AMERICA,          )
                                      ) Case No. 1:15-CR-00157
5                                     )          (RJA)(HKS)
                  Plaintiff,          )
6                                     )
   vs.                                ) February 12th, 2018
7                                     )
   COREY KRUG,                        )
8                                     )
                  Defendant.          )
9

10

**TRANSCRIPT OF JURY TRIAL TESTIMONY OF TINA TAYLOR**
11
**BEFORE THE HONORABLE RICHARD J. ARCARA**
**SENIOR UNITED STATES DISTRICT JUDGE**
12

13

<u>APPEARANCES:</u>
14

For the Plaintiff:    JAMES P. KENNEDY, JR.
15                     UNITED STATES ATTORNEY
                       BY:   JOHN D. FABIAN, ESQ.
16                           AARON J. MANGO, ESQ.
                       ASSISTANT UNITED STATES ATTORNEYS
17                     138 Delaware Avenue
                       Buffalo, NY 14202
18
For the Defendant:    CONNORS, LLP
19                     BY:   TERRANCE M. CONNORS, ESQ.
                             NICHOLAS A. ROMANO, ESQ,
20                     1000 Liberty Building
                       Buffalo, NY 14202
21
                       LIPSITZ GREEN SCIME CAMBRIA LLP
22                     BY:   HERBERT L. GREENMAN, ESQ.
                       42 Delaware Avenue, Suite 300
23                     Buffalo, NY 14202

24  Court Reporter:    MEGAN E. PELKA, RPR
                       Robert H. Jackson Courthouse
25                     2 Niagara Square
                       Buffalo, NY 14202

| | | |
|---|---|---|
| 02:40PM | 1 | (The jury entered the room at 2:40 p.m.) |
| 02:42PM | 2 | THE COURT:  All right.  Mr. Mango? |
| 02:42PM | 3 | MR. MANGO:  Thank you, Your Honor.  The government |
| 02:42PM | 4 | would call Special Agent Tina Taylor, witness number 1 on the |
| 02:42PM | 5 | list. |
| 02:42PM | 6 | THE CLERK:  Please state your full name and spell |
| 02:42PM | 7 | your last name for the record. |
| 02:42PM | 8 | THE WITNESS:  Tina Taylor, T-A-Y-L-O-R. |
| 02:42PM | 9 | (The witness is was sworn at 2:43 p.m.) |
| 02:43PM | 10 | MR. MANGO:  Your Honor, may I proceed? |
| 02:43PM | 11 | THE COURT:  Yes, please. |
| 02:43PM | 12 | |
| 02:43PM | 13 | DIRECT EXAMINATION |
| 02:43PM | 14 | |
| 02:43PM | 15 | BY MR. MANGO: |
| 02:43PM | 16 | Q.  Good afternoon. |
| 02:43PM | 17 | A.  Good afternoon. |
| 02:43PM | 18 | Q.  Can you please tell the jury how you are currently |
| 02:43PM | 19 | employed? |
| 02:43PM | 20 | A.  Yes.  I'm a special agent with the Federal Bureau of |
| 02:43PM | 21 | Investigation. |
| 02:43PM | 22 | Q.  How long have you been a special agent? |
| 02:43PM | 23 | A.  It will be 21 years in May. |
| 02:43PM | 24 | Q.  And what is your educational and work background? |
| 02:43PM | 25 | A.  In 1996, I graduated from the University at Buffalo |

02:43PM   1   School of Law.  I was admitted to practice law in New York

02:43PM   2   State and then, I worked for a law firm here in Buffalo for a

02:43PM   3   couple of years.  I became a special agent with the FBI in

02:43PM   4   1998.

02:43PM   5   Q.  Now, have you been a special agent here in Buffalo since

02:43PM   6   1998, or have you been assigned to any other locations?

02:43PM   7   A.  No.  My first office of assignment was New York City

02:43PM   8   where I worked white collar crime for 10 years and in 2008 I

02:44PM   9   transferred back to the Buffalo Division where I've worked

02:44PM  10   civil rights, human trafficking and violent crimes against

02:44PM  11   children.

02:44PM  12   Q.  Now, you mentioned civil rights.  What are your duties

02:44PM  13   with respect to civil rights investigations?

02:44PM  14   A.  Civil rights investigations for the FBI encompass hate

02:44PM  15   crimes, human trafficking and also color of law

02:44PM  16   investigations.

02:44PM  17   Q.  And if you can tell the jury, what do color of law

02:44PM  18   investigations entail?

02:44PM  19   A.  Color of law investigations are when a law enforcement

02:44PM  20   officer -- it could be at any level -- state, local,

02:44PM  21   federal -- is alleged to have deprived an individual of their

02:44PM  22   rights under color of law and color of law just means that in

02:44PM  23   their capacity as law enforcement officers.

02:44PM  24   Q.  Now, going back to December of 2014, did you also

02:44PM  25   investigate civil rights violations at that time?

02:44PM  1    A.  Yes.

02:44PM  2    Q.  Are you familiar with the Buffalo Police Department's use

02:44PM  3    of force reports?

02:44PM  4    A.  Yes.

02:45PM  5    Q.  We've seen those?

02:45PM  6    A.  Yes.

02:45PM  7    Q.  Okay.  Do you review the use of force reports during your

02:45PM  8    civil rights investigations?

02:45PM  9    A.  Yes, I do.

02:45PM  10   Q.  Why -- if you can tell the jury, why you review the use

02:45PM  11   of force reports in your civil rights investigations?

02:45PM  12   A.  I review the reports to determine what the law

02:45PM  13   enforcement officer's account of events that caused them to

02:45PM  14   use force were.  I also review them for witnesses and nature

02:45PM  15   of injuries to compare the nature of the injuries listed to

02:45PM  16   the reasons the officer used force.

02:45PM  17          I also review them for the tactics used and I review

02:45PM  18   that section.  Also, during the course of my investigation,

02:45PM  19   as I'm interviewing witnesses and gathering other evidence,

02:45PM  20   I'll go back to those use of force forms and compare what

02:45PM  21   I've read in my --

02:45PM  22          MR. CONNORS:  Excuse me.  I object to that.  It's

02:45PM  23   beyond the narrative and it's improper.

02:45PM  24          THE COURT:  Overruled.  Go ahead.

02:46PM  25          THE WITNESS:  I'll compare what I have learned in my

02:46PM    1    investigation from witness interviews and reviewing records to

02:46PM    2    what was listed in that use of force form.

02:46PM    3    BY MR. MANGO:

02:46PM    4    Q.  Now, at some point, did the FBI open a civil rights

02:46PM    5    investigation into Buffalo Police Officer Corey Krug?

02:46PM    6    A.  Yes.  We opened an investigation on December 11th, 2014.

02:46PM    7    Q.  And Buffalo Police Officer Corey Krug is the defendant in

02:46PM    8    this case?

02:46PM    9    A.  Yes.

02:46PM   10    Q.  And you mentioned that was December when of '14?

02:46PM   11    A.  December 11th.

02:46PM   12    Q.  And did you open that investigation?

02:46PM   13    A.  Yes.

02:46PM   14    Q.  What caused your investigation to be opened?

02:46PM   15           MR. CONNORS:  I'm going to object to that, Your

02:46PM   16    Honor.

02:46PM   17           THE COURT:  Overruled.

02:46PM   18           THE WITNESS:  Daniel Derenda, the Commissioner of the

02:46PM   19    Buffalo Police Department at the time, contacted the Buffalo

02:46PM   20    office of the FBI and then, I viewed a video provided to him

02:46PM   21    by a local news station.

02:46PM   22    BY MR. MANGO:

02:46PM   23    Q.  And at the time you opened your investigation of the

02:47PM   24    defendant, were you aware of the incident between the

02:47PM   25    Defendant Corey Krug and Marcus Worthy?

02:47PM   1    A.  No, I was not.

02:47PM   2    Q.  At the time you opened your investigation of the

02:47PM   3    Defendant Corey Krug, were you aware of the incident between

02:47PM   4    the defendant and Daniel Rashada?

02:47PM   5    A.  No.

02:47PM   6    Q.  How did you learn of those incidences?

02:47PM   7    A.  A subpoena was issued to the Buffalo Police Department to

02:47PM   8    provide any and all documents and records not only related to

02:47PM   9    the Devin Ford incident, but also related to any other

02:47PM  10    allegations where Officer Krug was alleged to have violated

02:47PM  11    an individual's civil rights.

02:47PM  12    Q.  And in reviewing the response to that subpoena, you

02:47PM  13    learned of Mr. Rashada and Mr. Worthy?

02:47PM  14            MR. CONNORS:  These are leading questions, Your

02:47PM  15    Honor.

02:47PM  16            THE COURT:  Sustained.  Rephrase your question,

02:47PM  17    please.

02:47PM  18            MR. MANGO:  Yes, Your Honor.

02:47PM  19    BY MR. MANGO:

02:47PM  20    Q.  So, how did you learn of Mr. Rashada and Mr. Worthy?

02:47PM  21    A.  Their names were within those documents provided by the

02:47PM  22    Buffalo Police Department.

02:48PM  23    Q.  Did you conduct interviews with Mr. Rashada and

02:48PM  24    Mr. Worthy, or did the FBI conduct interviews with them and

02:48PM  25    other witnesses to those events?

| | | |
|---|---|---|
| 02:48PM | 1 | A.  Yes. |
| 02:48PM | 2 | Q.  Now, did you also interview Devin Ford? |
| 02:48PM | 3 | A.  Yes. |
| 02:48PM | 4 | Q.  When was your first interview of Devin Ford? |
| 02:48PM | 5 | MR. CONNORS:  I'm going to object to this, Your |
| 02:48PM | 6 | Honor. |
| 02:48PM | 7 | THE COURT:  Overruled. |
| 02:48PM | 8 | THE WITNESS:  It was on December 23rd, 2014. |
| 02:48PM | 9 | BY MR. MANGO: |
| 02:48PM | 10 | Q.  Now, on December 23rd, 2014, at the conclusion of that |
| 02:48PM | 11 | interview, do you know if photographs were taken by the FBI |
| 02:48PM | 12 | of Devin Ford? |
| 02:48PM | 13 | A.  Yes. |
| 02:48PM | 14 | Q.  And did you witness those photographs be taken? |
| 02:48PM | 15 | A.  Yes. |
| 02:48PM | 16 | Q.  Special Agent, I'm showing you what's marked Government |
| 02:49PM | 17 | Exhibit 41C and 41D. |
| 02:49PM | 18 | A.  Yes. |
| 02:49PM | 19 | Q.  Do you see those in front of you? |
| 02:49PM | 20 | A.  Yes. |
| 02:49PM | 21 | Q.  Let's start with 41C.  What does -- what is depicted in |
| 02:49PM | 22 | 41C generally? |
| 02:49PM | 23 | A.  41C is a photograph taken of Devin Ford's leg after that |
| 02:49PM | 24 | interview that I was present at on December 23rd, 2014. |
| 02:49PM | 25 | Q.  And did you see his leg when this photograph was taken? |

TAYLOR -- BY MR. CONNORS -- 02/12/2019

02:49PM  1   A.  Yes.

02:49PM  2   Q.  And does the photograph accurately and fairly represent

02:49PM  3   what Devin Ford's leg looked like when you saw it?

02:49PM  4   A.  Yes.

02:49PM  5           MR. MANGO:  Judge, I would move Government Exhibit

02:49PM  6   41C into evidence.

02:49PM  7           MR. CONNORS:  May I ask a question in voir dire, Your

02:49PM  8   Honor?

02:49PM  9           THE COURT:  Yes, you may.

02:49PM  10

02:49PM  11                  VOIR DIRE EXAMINATION

02:49PM  12

02:49PM  13  BY MR. CONNORS:

02:49PM  14  Q.  The photograph that you have in front of you is

02:49PM  15  Exhibit 41C, Agent Taylor?

02:49PM  16  A.  Yes.

02:49PM  17  Q.  Can you tell us whether or not there were any techniques

02:49PM  18  used to enhance that particular photo?

02:50PM  19  A.  There are not any techniques.

02:50PM  20  Q.  Who took the photograph?

02:50PM  21  A.  My colleague, Special Agent Jennifer Amo.

02:50PM  22  Q.  With what camera?

02:50PM  23  A.  With the camera on her cell phone.

02:50PM  24  Q.  Now, you know that there were other photos taken at an

02:50PM  25  earlier stage with respect to Ford, correct?

TAYLOR -- BY MR. CONNORS -- 02/12/2019

02:50PM  1   A.  I know that there were other photos taken either by Ford

02:50PM  2   or by his lawyer, but I'm not sure when they were taken.

02:50PM  3   Q.  Well, you were here at trial when he testified that they

02:50PM  4   were taken earlier than the December 23rd photo that you

02:50PM  5   took?

02:50PM  6   A.  Uh-huh.  Yes.

02:50PM  7   Q.  You have to answer yes.

02:50PM  8   A.  Yes.  I'm sorry.

02:50PM  9   Q.  And yet, those photos that were taken earlier, to you,

02:50PM  10  were not satisfactory enough?

02:50PM  11          MR. MANGO:  Judge, I'm going to object.  We're

02:50PM  12  talking about this photo in front of her now.

02:50PM  13          THE COURT:  Sustained.

02:50PM  14  BY MR. CONNORS:

02:50PM  15  Q.  41C, you took that photo because the earlier ones were

02:50PM  16  not satisfactory to you?  Yes or no?

02:50PM  17          MR. MANGO:  Objection, Judge.  This just a brief voir

02:50PM  18  dire about this exhibit.

02:50PM  19          THE COURT:  Sustained.  That's cross-examination.

02:50PM  20          MR. CONNORS:  I'll be done.

02:50PM  21          THE COURT:  It will be received in evidence.

02:50PM  22  (Government Exhibit 41C was received in evidence.)

02:50PM  23

02:50PM  24          MR. MANGO:  Thank you, Your Honor.  I'd ask it be

02:51PM  25  published for the jury, 41C.

| 02:51PM | 1 | DIRECT EXAMINATION |

02:51PM    2

02:51PM    3    BY MR. MANGO:

02:51PM    4    Q.  Do you see this image on your screen there?

02:51PM    5    A.  Yes.

02:51PM    6    Q.  And is this the photograph you were just talking about?

02:51PM    7    A.  Yes.

02:51PM    8    Q.  And what does it depict?

02:51PM    9    A.  It depicts Devin Ford's leg as it appeared on

02:51PM   10    December 23rd, 2014.

02:51PM   11    Q.  Do you see injuries on that photograph?

02:51PM   12    A.  Yes.

02:51PM   13    Q.  Now --

02:51PM   14         MR. CONNORS:  Excuse me.  I'm going to ask that that

02:51PM   15    be stricken, Your Honor.  She can say the photograph is what

02:51PM   16    it is, but to interpret it would be improper.

02:51PM   17         THE COURT:  Overruled.

02:51PM   18         MR. MANGO:  We can bring that down, please,

02:51PM   19    Ms. Kingston.

02:51PM   20    BY MR. MANGO:

02:51PM   21    Q.  And if you could turn your attention to 41D that's in

02:51PM   22    front of you?

02:51PM   23    A.  Yes.

02:51PM   24    Q.  What is 41D, generally?

02:51PM   25    A.  41D is a photograph of Devin Ford's leg that Special

TAYLOR -- BY MR. MANGO-- 02/12/2019

10

| | | |
|---|---|---|
| 02:51PM | 1 | Agent Amo took while I was present after the interview on |
| 02:51PM | 2 | December 23rd, 2014. |
| 02:51PM | 3 | Q.  Did you see Mr. Ford's leg at the time the photograph was |
| 02:52PM | 4 | taken? |
| 02:52PM | 5 | A.  Yes. |
| 02:52PM | 6 | Q.  Does this photograph fairly and accurately depict what |
| 02:52PM | 7 | his leg looked like when you saw it? |
| 02:52PM | 8 | A.  Yes. |
| 02:52PM | 9 | MR. MANGO:  Judge, I would move Exhibit 41D into |
| 02:52PM | 10 | evidence. |
| 02:52PM | 11 | THE COURT:  It will be received. |
| 02:52PM | 12 | (Government Exhibit 41D was received in evidence.) |
| 02:52PM | 13 | |
| 02:52PM | 14 | MR. MANGO:  I would ask it be published for the jury. |
| 02:52PM | 15 | BY MR. MANGO: |
| 02:52PM | 16 | Q.  And is this the photograph THAT you were just describing? |
| 02:52PM | 17 | A.  Yes. |
| 02:52PM | 18 | Q.  What do you see in this photograph? |
| 02:52PM | 19 | MR. CONNORS:  Excuse me.  I'm going to object to that |
| 02:52PM | 20 | again, Your Honor.  The photograph speaks for itself.  That's |
| 02:52PM | 21 | the best evidence rule. |
| 02:52PM | 22 | THE COURT:  I'm going to sustain that. |
| 02:52PM | 23 | BY MR. MANGO: |
| 02:52PM | 24 | Q.  Did you testify in the Grand Jury in this case, Special |
| 02:52PM | 25 | Agent? |

| | | |
|---|---|---|
| 02:52PM | 1 | A.  Yes. |
| 02:52PM | 2 | Q.  Do you know who was referred to in the indictment as |
| 02:52PM | 3 | M.W.? |
| 02:52PM | 4 | A.  Yes. |
| 02:52PM | 5 | Q.  Who is that? |
| 02:52PM | 6 | A.  Marcus Worthy. |
| 02:52PM | 7 | Q.  And how about who is referred to in the indictment as |
| 02:52PM | 8 | D.R.? |
| 02:52PM | 9 | A.  Daniel Rashada. |
| 02:52PM | 10 | Q.  And who is referred to in the indictment as D.F.? |
| 02:52PM | 11 | A.  Devin Ford. |
| 02:52PM | 12 | MR. MANGO:  Okay.  Thank you.  Nothing further, Your |
| 02:52PM | 13 | Honor. |
| 02:52PM | 14 | |
| 02:52PM | 15 | CROSS-EXAMINATION |
| 02:53PM | 16 | |
| 02:53PM | 17 | BY MR. CONNORS: |
| 02:53PM | 18 | Q.  So, there are two photographs that you were present when |
| 02:53PM | 19 | they were taken? |
| 02:53PM | 20 | A.  Yes. |
| 02:53PM | 21 | Q.  And you told us that was on December 23rd, 2014? |
| 02:53PM | 22 | A.  Yes. |
| 02:53PM | 23 | Q.  And the first one would be 41C, correct? |
| 02:53PM | 24 | A.  Yes. |
| 02:53PM | 25 | MR. CONNORS:  Can we pull that up, please, Danielle? |

| 02:53PM | 1 | BY MR. CONNORS: |
| 02:53PM | 2 | Q.  Who was present when this photograph was taken? |
| 02:53PM | 3 | A.  Special Agent Jennifer Amo and myself. |
| 02:53PM | 4 | Q.  You told us earlier the type of camera that was used? |
| 02:53PM | 5 | A.  Yes. |
| 02:53PM | 6 | Q.  And you know that this photograph was taken after the |
| 02:53PM | 7 | photographs that are already in evidence, 41A and 41B, |
| 02:53PM | 8 | correct? |
| 02:53PM | 9 | A.  Yes. |
| 02:53PM | 10 | Q.  And whose idea was it to take additional paragraphs? |
| 02:53PM | 11 | A.  It was Special Agent Amo and myself's idea. |
| 02:53PM | 12 | Q.  When you took the photograph, did you use any device at |
| 02:53PM | 13 | all to enhance the photograph? |
| 02:53PM | 14 | A.  No. |
| 02:53PM | 15 | Q.  Do you know where Devin Ford was between the time of the |
| 02:54PM | 16 | photographs that were taken 41A and B and this photograph, |
| 02:54PM | 17 | 41C? |
| 02:54PM | 18 | A.  I don't. |
| 02:54PM | 19 | Q.  So, how long a period of time was it between those two |
| 02:54PM | 20 | periods of photographs?  His were taken, as you know from the |
| 02:54PM | 21 | testimony, December 11th, or thereabouts and yours were taken |
| 02:54PM | 22 | December 23rd, correct? |
| 02:54PM | 23 | A.  Right. |
| 02:54PM | 24 | Q.  That would be accurate statement of approximately two |
| 02:54PM | 25 | weeks? |

02:54PM  1  A.  Yes, according to his testimony.

02:54PM  2  Q.  Do you know where he was during those two weeks?

02:54PM  3  A.  I don't.

02:54PM  4  Q.  Do you know whether he was involved in any activities at

02:54PM  5  all during those two weeks?

02:54PM  6  A.  I don't.

02:54PM  7  Q.  Do you know whether or not he sustained any injuries

02:54PM  8  during those two weeks?

02:54PM  9  A.  I don't.

02:54PM  10  Q.  So, you wouldn't be able to tell us then, whether or not

02:54PM  11  41C, exhibit that's up, reflected anything that could have

02:54PM  12  occurred between the time of the first photograph, 41A and

02:54PM  13  the current photograph, 41C, correct?

02:54PM  14  A.  Correct.

02:54PM  15      MR. CONNORS:  Could we pull up 41A, please, Danielle?

02:54PM  16  BY MR. CONNORS:

02:55PM  17  Q.  Were you present when that photograph was taken?

02:55PM  18  A.  Yes.

02:55PM  19  Q.  Where that was taken?  Are you certain?

02:55PM  20  A.  I believe so.  That was taken at the U.S. Attorney's

02:55PM  21  office as well.

02:55PM  22  Q.  When?

02:55PM  23  A.  On December 23rd as well, I believe.

02:55PM  24  Q.  Are you sure this is not December 11th when he took them

02:55PM  25  at home with his own camera?

02:55PM    1    A.  I don't think so.

02:55PM    2    Q.  How about 41B?

02:55PM    3         MR. CONNORS:  Would you pull that up?  It's not in

02:55PM    4    evidence.

02:55PM    5    BY MR. CONNORS:

02:55PM    6    Q.  So, my question is -- let's stay with 41A for a second.

02:55PM    7    Was that taken the same day that 41C and D were taken?

02:55PM    8    A.  Yes.

02:55PM    9    Q.  So, how many photos were taken that day?

02:55PM   10    A.  Either three or four.  I'm not sure.

02:55PM   11    Q.  Are these all the photos that were taken?

02:55PM   12    A.  Yes.

02:55PM   13    Q.  So, the exhibit photos 41A and C and D are taken on

02:56PM   14    exactly the same day, is that right?

02:56PM   15    A.  Yes.

02:56PM   16         MR. CONNORS:  Excuse me for one second.

02:56PM   17         THE COURT:  We'll take a five-minute recess, ladies

02:56PM   18    and gentlemen.

02:56PM   19    (The jury left the room at 2:56 p.m.)

02:56PM   20    (Brief recess.)

03:00PM   21    (The jury entered the room at 3:00 p.m.)

03:03PM   22         THE CLERK:  All rise.  You may be seated.

03:03PM   23         THE COURT:  Okay.  Mr. Connors?

03:03PM   24         MR. CONNORS:  Thank you, Your Honor.  Approaching the

03:03PM   25    witness, Your Honor.

03:03PM    1    BY MR. CONNORS:

03:03PM    2    Q.  I've now put in front of you a series of photographs

03:03PM    3    starting at 41A, correct, Agent Taylor?

03:03PM    4    A.  Yes.

03:03PM    5    Q.  And it runs from 41A to, I believe, 41D, correct?

03:03PM    6    A.  Yes.

03:03PM    7    Q.  Let's look at 41B.  Just look at it yourself.

03:03PM    8    A.  Did you say B or D?

03:03PM    9    Q.  B.  Do you have it?

03:03PM    10   A.  Yes.

03:03PM    11   Q.  Okay.  That fairly and accurately depict the lower

03:03PM    12   portion of Devin Ford's leg?

03:03PM    13   A.  Yes.

03:03PM    14   Q.  Which leg?

03:03PM    15   A.  Left.

03:03PM    16   Q.  How do you know that?

03:03PM    17   A.  Well, I know that that's the leg that was injured and

03:03PM    18   that's the leg we took the photograph of.

03:03PM    19   Q.  You can't tell by looking at it which leg it is, can you?

03:03PM    20   A.  Well, I can tell that this is the photograph that we took

03:03PM    21   and we look a photograph of Devin Ford's leg.

03:04PM    22   Q.  Not both legs?

03:04PM    23   A.  No.

03:04PM    24        MR. CONNORS:  So, 41B is not in evidence.  I offer

03:04PM    25   that into evidence, Your Honor.

03:04PM   1          MR. MANGO:  No objection, Judge.

03:04PM   2          THE COURT:  All right.  It will be received.

03:04PM   3  (Government Exhibit 41B was received in evidence.)

03:04PM   4

03:04PM   5  BY MR. CONNORS:

03:04PM   6  Q.  Now, just so we're clear, I want to start with 41A.

03:04PM   7  That's a photo that you took or Agent Amo took?  41A?

03:04PM   8  A.  Yes.  It's a copy of 41D.

03:04PM   9  Q.  Is that a photo -- 41A, that's in evidence, is that a

03:04PM  10  photo that you or Agent Amo took?

03:04PM  11  A.  Yes.

03:04PM  12  Q.  And on what date was that taken?

03:04PM  13  A.  December 23rd.

03:04PM  14  Q.  41B, you just told us is a photo as well.  That was taken

03:04PM  15  by you or Agent Amo?

03:04PM  16  A.  Agent Amo, yes.

03:04PM  17  Q.  And that was taken on the same date, correct?

03:04PM  18  A.  Yes.

03:04PM  19  Q.  And 41C, will you look at that, please and tell us if

03:04PM  20  that is a photo taken by you or Agent Amo?

03:05PM  21  A.  Agent Amo on the same day.

03:05PM  22  Q.  On the same day?

03:05PM  23  A.  Yes.

03:05PM  24  Q.  And your answer would be the same with respect to 41D?

03:05PM  25  A.  Yes.

03:05PM   1   Q.  Are those all the photos in the possession of the Bureau

03:05PM   2   that were taken of Devin Ford?

03:05PM   3   A.  Yes.

03:05PM   4   Q.  You sure of that?

03:05PM   5   A.  I believe so, yes.

03:05PM   6   Q.  Have you seen any other photos of Devin Ford either prior

03:05PM   7   to the time that was taken or since that time?

03:05PM   8   A.  I have seen the photos that Devin Ford's attorney

03:05PM   9   provided to us, which I believe are the other ones,

03:05PM   10  Defendant's Exhibit 106 and 107.

03:05PM   11  Q.  Okay.  So, let's talk about that.  You have also in front

03:05PM   12  of you Defendant's Exhibit in evidence 106 and 107, correct?

03:05PM   13  A.  Yes.

03:05PM   14  Q.  But you weren't present when those were taken?

03:05PM   15  A.  I was not, no.

03:05PM   16  Q.  Do you know when they were taken?

03:05PM   17  A.  I don't.

03:05PM   18  Q.  Do you know if they were taken before the 41 series were

03:06PM   19  taken or not?

03:06PM   20  A.  I don't have any personal knowledge that they were taken

03:06PM   21  before.

03:06PM   22  Q.  Did you investigate that to see when they were taken when

03:06PM   23  they came into your position?

03:06PM   24  A.  When they came into my possession?

03:06PM   25  Q.  Yes.

TAYLOR -- BY MR. CONNORS-- 02/12/2019

18

03:06PM    1    A.   If would be in the file, but I didn't look at the date.

03:06PM    2    I believe it was after December 23rd, though.

03:06PM    3    Q.   After December 23rd?

03:06PM    4    A.   Yes.

03:06PM    5    Q.   And I think we've established with respect to 41C that

03:06PM    6    you didn't know the whereabouts of Devin Ford between

03:06PM    7    December -- actually, between November 27th and the time the

03:06PM    8    photos were taken on December 23rd, correct?

03:06PM    9    A.   Yes.

03:06PM   10    Q.   And that would hold for all of the 41 series of exhibits,

03:06PM   11    correct?

03:06PM   12    A.   Yes.

03:06PM   13    Q.   Okay.  Now, I want to ask you one question to make sure I

03:06PM   14    heard you correctly.  You told us that you have been in the

03:06PM   15    Bureau and you were here present in Buffalo in the years

03:06PM   16    2010, 2011 right through 2014, correct?

03:06PM   17    A.   Yes.

03:06PM   18    Q.   And you also told us in your direct examination that

03:06PM   19    during the time period, you had access to the use of force

03:07PM   20    reports of the Buffalo Police Department, true?

03:07PM   21    A.   I did not say that.

03:07PM   22    Q.   Well, did you?

03:07PM   23    A.   Did I have access to them?

03:07PM   24    Q.   Yes.

03:07PM   25    A.   Like unconditional access to them?

03:07PM  1   Q.  It's a simple question.  Did you have access to them in

03:07PM  2   your role as working for the civil rights division?

03:07PM  3   A.  Sure.  If there was an investigation open and the Buffalo

03:07PM  4   Police Department was subpoenaed, I would have access to

03:07PM  5   whatever use of force form applied with the investigation.

03:07PM  6   Q.  And that would apply in the years 2010, correct?

03:07PM  7   A.  Yes.

03:07PM  8   Q.  2011?

03:07PM  9   A.  Yes.

03:07PM  10  Q.  Right up until 2014, correct?

03:07PM  11  A.  Yes.

03:07PM  12       MR. CONNORS:  Thank you.  That's all I have, Your

03:07PM  13  Honor.

03:07PM  14       THE COURT:  When you say you have access, what do you

03:07PM  15  mean you have access?  Did you actually review any of these

03:07PM  16  reports?

03:07PM  17       THE WITNESS:  Only if they applied to the

03:07PM  18  investigation that I was working.  So, I didn't have carte

03:07PM  19  blanche access.

03:07PM  20       THE COURT:  You only had access to what you were

03:08PM  21  investigating?

03:08PM  22       THE WITNESS:  Right.  I mean, I would have to

03:08PM  23  subpoena them from the Buffalo Police Department.  I didn't

03:08PM  24  have access to them within the FBI or I could just go in a

03:08PM  25  file cabinet and look at them.  If they were related to an

US v KRUG -- 2/12/19 -- PROCEEDINGS

20

03:08PM  1   investigation I was working, I could then subpoena them and I

03:08PM  2   would be able to look at them.

03:08PM  3           THE COURT:  All right.  Mr. Mango?

03:08PM  4           MR. MANGO:  Nothing further.

03:08PM  5           THE COURT:  Thank you.

03:08PM  6           THE WITNESS:  Thank you.

7   (The witness was excused at 3:08 p.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          *     *     *     *     *     *     *

2

3          I certify that the foregoing is a

4     correct transcription of the proceedings

5     recorded by me in this matter.

6

7

8

9                         s/ Megan E. Pelka, RPR

10                        Court Reporter,

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25