1          **UNITED STATES DISTRICT COURT**
           **WESTERN DISTRICT OF NEW YORK**
2


3
   UNITED STATES OF AMERICA,        )
4                                   ) Case No. 1:15-CR-00157
                                    )              (RJA)(HKS)
5                   Plaintiff,      )
                                    )
6   vs.                             ) July 19th, 2019
                                    )
7   COREY KRUG,                     )
                                    )
8                   Defendant.      )

9

10       **TRANSCRIPT OF JURY TRIAL TESTIMONY OF ANDRE LLOYD**
            **BEFORE THE HONORABLE RICHARD J. ARCARA**
11            **SENIOR UNITED STATES DISTRICT JUDGE**

12

13  <u>APPEARANCES</u>:

14  For the Plaintiff:    JAMES P. KENNEDY, JR.
                          UNITED STATES ATTORNEY
15                        BY:   JOHN D. FABIAN, ESQ.
                                AARON J. MANGO, ESQ.
16                        ASSISTANT UNITED STATES ATTORNEYS
                          138 Delaware Avenue
17                        Buffalo, NY 14202

18  For the Defendant:    CONNORS, LLP
                          BY:   TERRANCE M. CONNORS, ESQ.
19                              NICHOLAS A. ROMANO, ESQ,
                          1000 Liberty Building
20                        Buffalo, NY 14202

21                        LIPSITZ GREEN SCIME CAMBRIA LLP
                          BY:  HERBERT L. GREENMAN, ESQ.
22                        42 Delaware Avenue, Suite 300
                          Buffalo, NY 14202
23
    Court Reporter:       MEGAN E. PELKA, RPR
24                        Robert H. Jackson Courthouse
                          2 Niagara Square
25                        Buffalo, NY 14202

1                      **I N D E X**

2    WITNESSES                                          PAGE

3    GOVERNMENT

4    ANDRE LLOYD
         Cross-Examination by Mr. Romano              2
5         Redirect Examination by Mr. Mango           21

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

08:46AM   1   (The jury entered the room at 9:00 a.m.)

09:01AM   2          THE CLERK:  Criminal action 2015-157A, United States

09:01AM   3   v. Corey Krug.  Jury trial.  Counsel, please state your name

09:01AM   4   and the party you represent for the record.

09:01AM   5          MR. FABIAN:  John Fabian on behalf of the

09:01AM   6   United States along with Aaron Mango and paralegal Trish

09:01AM   7   Prawel.

09:01AM   8          MR. CONNORS:  Good morning, Your Honor.  Terry

09:01AM   9   Connors with Nicholas Romano and Herb Greenman on behalf of

09:01AM  10   Corey Krug and our paralegal Emma Powell.

09:01AM  11          THE COURT:  Good morning.  Good morning, everyone.

09:01AM  12   (An off-the-record discussion was held.)

09:02AM  13          THE COURT:  Once again, there was an article in the

09:02AM  14   paper today.  Anyone read the article?  Okay.  Please don't

09:02AM  15   read it.  And again, we don't want to get any information

09:03AM  16   about this case other than what occurs in the courtroom.  All

09:03AM  17   right.  We're all set.  Ready to go?  Okay, Mr. Romano.

09:03AM  18          MR. ROMANO:  Thank you, Your Honor.  May I approach

09:03AM  19   the witness?

09:03AM  20          THE COURT:  Yes, you may.

09:03AM  21

09:03AM  22                           CROSS-EXAMINATION

09:03AM  23

09:03AM  24   BY MR. ROMANO:

09:03AM  25   Q.  Lieutenant Lloyd, I'm showing you Defense Exhibit 120.  I

09:03AM   1    think we ended the day yesterday talking about that

09:03AM   2    photograph.  I just have a couple follow-up questions for

09:03AM   3    you.  Is that okay?

09:03AM   4    A.  Okay.

09:03AM   5              MR. ROMANO:  Ms. Prawel, would you put up Defense

09:03AM   6    Exhibit 120?

09:03AM   7    BY MR. ROMANO:

09:03AM   8    Q.  Lieutenant, just to orient ourselves, this path, this

09:03AM   9    brick path right here, that is Asbury Alley, isn't that

09:03AM  10    right?

09:03AM  11    A.  Correct.

09:03AM  12    Q.  Okay.  And this parking lot right here, that is the

09:03AM  13    parking lot on the corner of West Chippewa Street and Pearl

09:03AM  14    Street in downtown Buffalo, correct?

09:03AM  15    A.  Correct.

09:03AM  16    Q.  And this street right here is West Chippewa Street, true?

09:03AM  17    A.  Correct.

09:03AM  18    Q.  And this is Pearl Street, isn't that right?

09:04AM  19    A.  Yes.

09:04AM  20    Q.  And this photograph is taken from -- I know there's

09:04AM  21    another photograph we looked at yesterday -- but basically,

09:04AM  22    having walked down Asbury Alley and turning around and taking

09:04AM  23    the photograph from the parking lot with the gap behind the

09:04AM  24    buildings, the gap in between, is that right?

09:04AM  25    A.  Yes, that's correct.

LLOYD  --  MR. ROMANO  --  7/19/19

4

| | | |
|---|---|---|
| 09:04AM | 1 | Q.  Now, there were some questions yesterday about whether |
| 09:04AM | 2 | anything had changed since 2014, isn't that right? |
| 09:04AM | 3 | A.  Correct. |
| 09:04AM | 4 | Q.  Okay.  Now, you worked in B District at that time? |
| 09:04AM | 5 | A.  Yes. |
| 09:04AM | 6 | Q.  This was your beat as a police officer, true? |
| 09:04AM | 7 | A.  True. |
| 09:04AM | 8 | Q.  So, in November of 2014, Asbury Alley was in the same |
| 09:04AM | 9 | condition, wasn't it? |
| 09:04AM | 10 | MR. MANGO:  Objection, Judge. |
| 09:04AM | 11 | THE COURT:  If he knows.  You're leading this |
| 09:04AM | 12 | witness.  We talked about this yesterday.  You can ask him |
| 09:04AM | 13 | questions. |
| 09:04AM | 14 | MR. ROMANO:  Okay. |
| 09:04AM | 15 | THE COURT:  All right.  Go ahead. |
| 09:04AM | 16 | THE WITNESS:  I can't answer specifically if it was |
| 09:04AM | 17 | the same condition because it's been some time.  It's been |
| 09:04AM | 18 | five years now, so I can't. |
| 09:04AM | 19 | BY MR. ROMANO: |
| 09:04AM | 20 | Q.  There was an Asbury Alley in November 2014, wasn't there? |
| 09:04AM | 21 | A.  Correct. |
| 09:05AM | 22 | Q.  How about the parking lot was that there in November |
| 09:05AM | 23 | 2014? |
| 09:05AM | 24 | A.  Yes. |
| 09:05AM | 25 | Q.  West Chippewa Street, was that there? |

LLOYD  --  MR. ROMANO  --  7/19/19
5

09:05AM   1   A.   Yes.

09:05AM   2   Q.   Pearl Street?

09:05AM   3   A.   Yes.

09:05AM   4   Q.   And they intersected in 2014, is that right?

09:05AM   5   A.   Correct.

09:05AM   6   Q.   Any of these buildings you see in this photograph did not

09:05AM   7   exist in November of 2014?

09:05AM   8   A.   The buildings themselves existed in 2014, yes.

09:05AM   9   Q.   So, is there anything in this photograph that doesn't

09:05AM   10   fairly and accurately represent this corner and Asbury Alley

09:05AM   11   from November 2014?

09:05AM   12         MR. MANGO:   Objection, Judge.   He answered that

09:05AM   13   question already.   He can't say that.

09:05AM   14         THE COURT:   Well, how about this.   Do you know, sir?

09:05AM   15   Can you answer that question?

09:05AM   16         THE WITNESS:   I can answer that the buildings

09:05AM   17   themselves were there, but as I said previously, the

09:05AM   18   businesses have changed, so I can't.

09:05AM   19   BY MR. ROMANO:

09:05AM   20   Q.   The names of the businesses?

09:05AM   21   A.   The names of the businesses.

09:05AM   22   Q.   But you agree that parking lot, the buildings themselves,

09:05AM   23   Asbury Alley existed in November 2014, correct?

09:05AM   24   A.   Correct, correct.

09:05AM   25   Q.   Now, Lieutenant --

LLOYD  --  MR. ROMANO  --  7/19/19

6

| | | |
|---|---|---|
| 09:06AM | 1 | MR. ROMANO:  You can take that down, Ms. Prawel. |
| 09:06AM | 2 | THE COURT:  By the way, put the photograph back up, |
| 09:06AM | 3 | please.  Now, there's a number of cars that are in that |
| 09:06AM | 4 | photograph.  You see the cars in the picture? |
| 09:06AM | 5 | THE WITNESS:  Yes, Your Honor. |
| 09:06AM | 6 | THE COURT:  Now, you were there that night at the |
| 09:06AM | 7 | other end of Chippewa Street near Delaware, I believe? |
| 09:06AM | 8 | THE WITNESS:  Correct, Your Honor. |
| 09:06AM | 9 | THE COURT:  Do you have any idea what the composition |
| 09:06AM | 10 | was of automobiles in that particular parking lot on that |
| 09:06AM | 11 | particular night? |
| 09:06AM | 12 | THE WITNESS:  No, I do not, sir. |
| 09:06AM | 13 | THE COURT:  All right.  Go ahead. |
| 09:06AM | 14 | BY MR. ROMANO: |
| 09:06AM | 15 | Q.  Lieutenant Lloyd -- |
| 09:06AM | 16 | MR. ROMANO:  If you could now take that down, |
| 09:06AM | 17 | Ms. Prawel. |
| 09:06AM | 18 | BY MR. ROMANO: |
| 09:06AM | 19 | Q.  Lieutenant Lloyd, police officers, Buffalo Police |
| 09:06AM | 20 | Officers in particular, they use discretion on their job |
| 09:06AM | 21 | everyday, isn't that right? |
| 09:06AM | 22 | A.  That's right. |
| 09:06AM | 23 | Q.  They use discretion when they make an arrest? |
| 09:06AM | 24 | A.  Correct. |
| 09:06AM | 25 | MR. MANGO:  Objection, Judge.  Again, we're leading. |

09:06AM  1          THE COURT:  Leading I understand.  You're testifying

09:06AM  2   as a matter of fact.  Please do not lead the witness.

09:07AM  3          MR. ROMANO:  Your Honor, if I just may be heard.

09:07AM  4   He's --

09:07AM  5          THE COURT:  And I want to be heard.  Just do what I

09:07AM  6   just told you.

09:07AM  7   BY MR. ROMANO:

09:07AM  8   Q.  Lieutenant Lloyd, do police officers use discretion when

09:07AM  9   they make an arrest?

09:07AM  10  A.  Yes.

09:07AM  11  Q.  Do Buffalo Police Officers decide whether to make an

09:07AM  12  arrest?

09:07AM  13  A.  Yes.

09:07AM  14  Q.  And whether or not to make an arrest?

09:07AM  15  A.  Yes.

09:07AM  16  Q.  And a Buffalo Police Officer, would you agree -- or I

09:07AM  17  guess I can't ask that question.  Is a Buffalo Police Officer

09:07AM  18  required to make an arrest?

09:07AM  19  A.  No.

09:07AM  20  Q.  Is it always up to their discretion?

09:07AM  21  A.  Yes.

09:07AM  22  Q.  Is there anything improper about a Buffalo Police Officer

09:07AM  23  declining to make an arrest?

09:07AM  24  A.  No.

09:07AM  25          THE COURT:  Well, I guess it depends on the

LLOYD  --  MR. ROMANO  --  7/19/19

8

| | | |
|---|---|---|
| 09:07AM | 1 | circumstances.  I mean, you're saying that if there was a |
| 09:07AM | 2 | crime being committed in front of a police officer, they have |
| 09:07AM | 3 | discretion.  No question about that.  They use their judgment. |
| 09:08AM | 4 | But is it absolute judgment as far as whether, according to |
| 09:08AM | 5 | their responsibilities, to make an arrest or not make an |
| 09:08AM | 6 | arrest if, in fact, a certain event happened that would |
| 09:08AM | 7 | warrant an arrest? |
| 09:08AM | 8 | THE WITNESS:  But, Your Honor, it refers more to |
| 09:08AM | 9 | their discretion.  So, they may not make an arrest, but they |
| 09:08AM | 10 | would have to deal with the consequences of not making an |
| 09:08AM | 11 | arrest. |
| 09:08AM | 12 | THE COURT:  Thank you. |
| 09:08AM | 13 | BY MR. ROMANO: |
| 09:08AM | 14 | Q.  So, you agree there's nothing improper about an officer |
| 09:08AM | 15 | declining to -- |
| 09:08AM | 16 | MR. MANGO:  Objection, Judge. |
| 09:08AM | 17 | THE COURT:  You're saying, do you agree.  It's the |
| 09:08AM | 18 | way you ask the question, Mr. Romano.  Just rephrase the |
| 09:08AM | 19 | question.  It's very easy to do it.  Just rephrase your |
| 09:08AM | 20 | questions. |
| 09:08AM | 21 | BY MR. ROMANO: |
| 09:08AM | 22 | Q.  Lieutenant Lloyd, when an officer decides to make an |
| 09:08AM | 23 | arrest, is that officer taken out of commission? |
| 09:09AM | 24 | A.  Yes. |
| 09:09AM | 25 | Q.  How much time, roughly, does it take an officer to arrest |

| | | |
|---|---|---|
| 09:09AM | 1 | someone and process them? |
| 09:09AM | 2 | A.  The time varies depending on the type of arrest.  Could |
| 09:09AM | 3 | be anywhere from an hour to five hours. |
| 09:09AM | 4 | Q.  Is it a long period of time? |
| 09:09AM | 5 | A.  It depends on the type of arrest. |
| 09:09AM | 6 | Q.  Do police officers use discretion when they decide to use |
| 09:09AM | 7 | force? |
| 09:09AM | 8 | A.  They can use discretion, but it's within the bounds of |
| 09:09AM | 9 | the, as we discussed earlier, the Fourth Amendment. |
| 09:09AM | 10 | Q.  Do Buffalo Police Officers use discretion whether to use |
| 09:09AM | 11 | force or not? |
| 09:09AM | 12 | A.  Yes. |
| 09:09AM | 13 | Q.  And when a police officer decides to use force, do they |
| 09:09AM | 14 | have the ability to decide what level to use? |
| 09:09AM | 15 | MR. MANGO:  Objection, Judge.  I think that's asked |
| 09:09AM | 16 | and answered in the previous question. |
| 09:09AM | 17 | THE COURT:  Overruled.  Go ahead.  You may answer, |
| 09:09AM | 18 | sir. |
| 09:09AM | 19 | THE WITNESS:  They do, but, again, within the bounds |
| 09:09AM | 20 | of the Fourth Amendment and Article 35, Criminal Procedure |
| 09:10AM | 21 | Law. |
| 09:10AM | 22 | BY MR. ROMANO: |
| 09:10AM | 23 | Q.  I know there's some questions on direct examination about |
| 09:10AM | 24 | the standard in the Manual of Procedures.  Do you remember |
| 09:10AM | 25 | that question? |

| | | |
|---|---|---|
| 09:10AM | 1 | A.  Correct. |
| 09:10AM | 2 | Q.  Would you agree that the actual standard is that a |
| 09:10AM | 3 | Buffalo Police Officer can use the level of force reasonably |
| 09:10AM | 4 | necessary to achieve their law enforcement objectives? |
| 09:10AM | 5 | A.  Correct. |
| 09:10AM | 6 | Q.  Lieutenant Lloyd, do our laws in New York State and in |
| 09:10AM | 7 | the United States authorize police officers to use force? |
| 09:10AM | 8 | A.  Yes. |
| 09:10AM | 9 | MR. MANGO:  Objection, Judge.  We're not talking |
| 09:10AM | 10 | about New York State Law here. |
| 09:10AM | 11 | THE COURT:  Sustained. |
| 09:10AM | 12 | BY MR. ROMANO: |
| 09:10AM | 13 | Q.  Do the laws of this country authorize Buffalo Police |
| 09:10AM | 14 | Officers to use force? |
| 09:10AM | 15 | A.  Yes. |
| 09:10AM | 16 | Q.  Lieutenant Lloyd, is using force part of a Buffalo Police |
| 09:10AM | 17 | Officer's job? |
| 09:10AM | 18 | A.  Yes. |
| 09:10AM | 19 | Q.  Are all uses of force reportable? |
| 09:10AM | 20 | MR. MANGO:  Objection, Judge. |
| 09:10AM | 21 | THE COURT:  Well, you can answer the question, sir, |
| 09:11AM | 22 | if you know the answer. |
| 09:11AM | 23 | THE WITNESS:  Not all uses of force are reportable, |
| 09:11AM | 24 | no. |
| 09:11AM | 25 | |

09:11AM    1    BY MR. ROMANO:

09:11AM    2    Q.  Using a firearm, is that a reportable use of force?

09:11AM    3    A.  Yes.

09:11AM    4    Q.  How about a Buffalo Police Officer using hand techniques,

09:11AM    5    is that a reportable use of force?

09:11AM    6    A.  Yes.

09:11AM    7    Q.  Using hands techniques?

09:11AM    8    A.  Yes.

09:11AM    9    Q.  Is that a required reportable use of force?

09:11AM   10         MR. MANGO:  Objection, Judge.  He answered the

09:11AM   11    question.

09:11AM   12         THE COURT:  Overruled.  Go ahead, sir you may answer.

09:11AM   13         THE WITNESS:  Yes.

09:11AM   14    BY MR. ROMANO:

09:11AM   15    Q.  What's an example of a use of force that's unreportable?

09:11AM   16    A.  Maybe with your -- you have a crowd and you may be using

09:11AM   17    your -- maybe your baton to keep people back.  Sort of like

09:11AM   18    in a riot situation or where you have a large crowd and

09:11AM   19    you're just trying to keep people from a certain area.  That

09:11AM   20    would be an incidence where you don't really have an

09:12AM   21    identical -- identifiable target or you're just trying to --

09:12AM   22    or maybe breaking up a fight or something like that.

09:12AM   23    Q.  When the officer uses his baton, he makes contact with

09:12AM   24    these people?

09:12AM   25    A.  He could, yes.

09:12AM   1   Q.  And after doing that, that's not a reportable use of

09:12AM   2   force?

09:12AM   3   A.  It's not necessarily if there's no physical injury.  If

09:12AM   4   this happens and there's no striking motion, it's just being

09:12AM   5   used sort of as an extension of your hands to keep people at

09:12AM   6   bay.

09:12AM   7   Q.  How about using your hands in the same way; that's not a

09:12AM   8   reportable use of force, is it?

09:12AM   9   A.  If you're using your hands?

09:12AM  10   Q.  In the same way.

09:12AM  11   A.  No.

09:12AM  12   Q.  Now, Lieutenant Lloyd, when there's no arrest and as you

09:12AM  13   testified earlier, that's within the discretion of the police

09:12AM  14   officer, it makes filling out a use of force form much more

09:12AM  15   difficult, correct?

09:12AM  16   A.  Correct, because you don't have the subject's information

09:12AM  17   to put on the use of force report.

09:13AM  18   Q.  You also do not have a CD number?

09:13AM  19   A.  Correct.

09:13AM  20   Q.  What is a CD number?

09:13AM  21   A.  It's a number that identifies an incident -- police

09:13AM  22   incident.

09:13AM  23   Q.  In addition to not having a CD -- would a CD number be

09:13AM  24   similar to like, an index number for the police department?

09:13AM  25   A.  Correct.

LLOYD  --  MR. ROMANO  --  7/19/19

13

| | | |
|---|---|---|
| 09:13AM | 1 | Q.  So, in addition to not having a CD number, I think you |
| 09:13AM | 2 | testified that you would not have the subject's information? |
| 09:13AM | 3 | A.  Correct. |
| 09:13AM | 4 | Q.  And what would that include? |
| 09:13AM | 5 | A.  Names, date of births, addresses, demographics. |
| 09:13AM | 6 | Q.  Contact information? |
| 09:13AM | 7 | A.  Contact information, correct. |
| 09:13AM | 8 | Q.  How about height or weight? |
| 09:13AM | 9 | A.  Correct. |
| 09:13AM | 10 | Q.  Gender? |
| 09:13AM | 11 | A.  Correct. |
| 09:13AM | 12 | Q.  And the condition of the subject, would you have that |
| 09:13AM | 13 | information if you didn't arrest him? |
| 09:13AM | 14 | A.  You may have the condition of the subject actually like, |
| 09:13AM | 15 | just by -- because you can visually see what the subject's |
| 09:13AM | 16 | condition is, which means with the rest of the things we |
| 09:13AM | 17 | named. |
| 09:13AM | 18 | Q.  How about when it comes to actual tactics used?  Would |
| 09:14AM | 19 | you be able to know for certain whether the use of force |
| 09:14AM | 20 | tactic used was effective if you didn't arrest the person? |
| 09:14AM | 21 | A.  It would be difficult. |
| 09:14AM | 22 | Q.  Now, Lieutenant Lloyd, would it be fair to say that if an |
| 09:14AM | 23 | arrest was not made and less information was included on the |
| 09:14AM | 24 | use of force form, it would be less effective? |
| 09:14AM | 25 | A.  Less effective for us, I guess.  Actually retaining the |

09:14AM  1  person's information who the force was actually used upon,

09:14AM  2  yes.

09:14AM  3  Q.  And use of force forms are used for a variety of reasons,

09:14AM  4  aren't they?

09:14AM  5  A.  Yes.

09:14AM  6  Q.  Aren't they also used for training?

09:14AM  7  A.  Yes.

09:14AM  8  Q.  A copy of the use of force form is sent to the police

09:14AM  9  academy?

09:14AM  10  A.  Correct.

09:14AM  11  Q.  And use of force forms are used for statistical purposes?

09:14AM  12  A.  Correct.

09:14AM  13  Q.  They track what level of force is used?

09:14AM  14  A.  Yes.

09:14AM  15  Q.  And it's also entered into a database maintained by the

09:15AM  16  Buffalo Police Department?

09:15AM  17  A.  Correct.

09:15AM  18  Q.  So, it would be fair to say that if the form is less

09:15AM  19  complete, it's less effective?

09:15AM  20  A.  Correct.

09:15AM  21        MR. MANGO:  Objection, Judge.

09:15AM  22        THE COURT:  Overruled.

09:15AM  23  BY MR. ROMANO:

09:15AM  24  Q.  And with less information, there's less information to

09:15AM  25  review?

09:15AM  1    A.  Correct.

09:15AM  2    Q.  And less information for the database?

09:15AM  3    A.  Correct.

09:15AM  4    Q.  In addition to maintaining the use of force form, there's

09:15AM  5    also an internal tracking system with respect to these forms?

09:15AM  6    A.  Yes, there is.

09:15AM  7    Q.  Now, this tracking system is an automatic monitoring

09:15AM  8    system?

09:15AM  9    A.  Correct.

09:15AM  10   Q.  And my understanding is that it's maintained over the

09:15AM  11   course of a year?

09:15AM  12   A.  Correct.

09:15AM  13   Q.  And if, over the course of one year, an officer has five

09:15AM  14   or more use of force forms, there's an automatic alert?

09:15AM  15   A.  Correct.

09:15AM  16   Q.  And that alert is just an internal mechanism that sends

09:15AM  17   the message to the officer's commander?

09:15AM  18   A.  Correct.

09:15AM  19   Q.  The officer is then under the Manual of Procedures to

09:16AM  20   review the use of force form and address it as need be?

09:16AM  21   A.  Correct, sir.

09:16AM  22   Q.  Or elect not to address it based upon what the form

09:16AM  23   requires?

09:16AM  24   A.  Correct.

09:16AM  25   Q.  Now, Lieutenant Lloyd, the simple fact that an automatic

LLOYD  --  MR. ROMANO  --  7/19/19

16

| | | |
|---|---|---|
| 09:16AM | 1 | alert is raised does not mean that a Buffalo Police Officer |
| 09:16AM | 2 | acted improperly? |
| 09:16AM | 3 | A.  Correct. |
| 09:16AM | 4 | Q.  Because use of force is part of the job and this alert is |
| 09:16AM | 5 | automatic? |
| 09:16AM | 6 | MR. MANGO:  Objection, Judge. |
| 09:16AM | 7 | THE COURT:  Sustained.  You're leading the witness. |
| 09:16AM | 8 | BY MR. ROMANO: |
| 09:16AM | 9 | Q.  Is there anything wrong with an automatic alert being |
| 09:16AM | 10 | raised after a use of force form is completed? |
| 09:16AM | 11 | A.  Not necessarily. |
| 09:16AM | 12 | Q.  Lieutenant Lloyd, you're currently in the Internal |
| 09:16AM | 13 | Affairs Division? |
| 09:16AM | 14 | A.  Yes. |
| 09:16AM | 15 | Q.  And -- but you didn't join the Internal Affairs Division |
| 09:16AM | 16 | until 2016? |
| 09:16AM | 17 | A.  Correct. |
| 09:16AM | 18 | Q.  So, that was after the incident on Chippewa on |
| 09:16AM | 19 | November 26th, 2014? |
| 09:16AM | 20 | A.  Correct. |
| 09:16AM | 21 | Q.  Now, with respect to IAD files, can they be opened in a |
| 09:17AM | 22 | variety of ways? |
| 09:17AM | 23 | A.  Yes. |
| 09:17AM | 24 | Q.  Can a citizen file a complaint against a Buffalo Police |
| 09:17AM | 25 | Officer? |

09:17AM   1   A.  Yes.

09:17AM   2   Q.  Can someone that a police officer arrested follow up and

09:17AM   3   file a complaint?

09:17AM   4   A.  Yes.

09:17AM   5   Q.  Have people who have been arrested or citizens ever come

09:17AM   6   to the police department and filed a complaint against an

09:17AM   7   officer they didn't know the name of?

09:17AM   8   A.  Yes.

09:17AM   9   Q.  And does the police department help that individual find

09:17AM   10  out who the officer was they had the interaction with?

09:17AM   11  A.  It's not helping the individual, it's actually doing our

09:17AM   12  own independent investigation.  So, it's not.

09:17AM   13  Q.  But just so I understand, Lieutenant, if a citizen came

09:17AM   14  into the police department and filed a complaint and say the

09:17AM   15  citizen didn't know the person's name, would the police

09:17AM   16  department help locate and then find out who that officer

09:17AM   17  was?

09:17AM   18       MR. MANGO:  Objection, Judge.  He answered that

09:18AM   19  question.  We're on a different topic than direct and it's

09:18AM   20  leading.

09:18AM   21       THE COURT:  All right.  I'll allow it.  Go ahead.

09:18AM   22       THE WITNESS:  It's part of the investigation.  So,

09:18AM   23  like I just stated previously, gathering reports, gathering

09:18AM   24  statement from witnesses, be it oral or written statements,

09:18AM   25  that's all part of our investigation.  So, it's not actually

09:18AM   1    helping out one person, but it could actually be helpful to

09:18AM   2    the officer as well.  So, I would say it's helping either the

09:18AM   3    officer or the complainant.

09:18AM   4    Q.  No.  Well, let me ask you this.  If a citizen came to the

09:18AM   5    Buffalo Police Department to file a complaint and they didn't

09:18AM   6    know the officer's name, would the police department say, oh,

09:18AM   7    well.  I'm sorry.  You don't know the person's name and you

09:18AM   8    can't file a complaint?

09:18AM   9            MR. MANGO:  Objection, Judge.  It's speculative, it's

09:18AM  10    irrelevant.  I don't see the relevance in this line of

09:18AM  11    questioning.

09:18AM  12            THE COURT:  Sustained.

09:18AM  13    BY MR. ROMANO:

09:18AM  14    Q.  Another way an IAD file can be opened is with a civil

09:19AM  15    lawsuit?

09:19AM  16    A.  Correct.

09:19AM  17    Q.  Is that an automatic opening of an IAD file?

09:19AM  18    A.  Yes.

09:19AM  19    Q.  So, if someone files a lawsuit, IAD automatically opens a

09:19AM  20    file?

09:19AM  21    A.  Yes.

09:19AM  22    Q.  Takes action with the officer?

09:19AM  23    A.  Yes.

09:19AM  24    Q.  Lieutenant Lloyd, do you know that Devin Ford sued

09:19AM  25    Officer Krug, the Buffalo Police Department, the City of

| | | |
|---|---|---|
| 09:19AM | 1 | Buffalo and 10 other Buffalo Police Officers? |
| 09:19AM | 2 | A.  Yes. |
| 09:19AM | 3 | Q.  Do you know if that lawsuit is still pending? |
| 09:19AM | 4 | A.  I'm not aware. |
| 09:19AM | 5 | Q.  But you do know that the IAD file in connection with |
| 09:19AM | 6 | Devin Ford's lawsuit is still pending? |
| 09:19AM | 7 | A.  Correct. |
| 09:19AM | 8 | Q.  Is it fair to say, Lieutenant Lloyd, that simply opening |
| 09:19AM | 9 | an IAD file does not indicate that a police officer has done |
| 09:19AM | 10 | anything wrong? |
| 09:19AM | 11 | A.  That's fair to say. |
| 09:19AM | 12 | Q.  So, I want to walk through a process just for a second. |
| 09:20AM | 13 | So, when an IAD complaint comes in from a citizen or from |
| 09:20AM | 14 | whomever, who conducts the inquiry? |
| 09:20AM | 15 | A.  The investigators, myself or we have other -- we have |
| 09:20AM | 16 | five other lieutenants that conduct investigations. |
| 09:20AM | 17 | Q.  And what kind of documents are obtained and reviewed? |
| 09:20AM | 18 | A.  Numerous documents, kind of case dependent.  Say, in |
| 09:20AM | 19 | general, we were given -- we're gathering -- if there was an |
| 09:20AM | 20 | incident where an arrest was made, crime reports, arrest |
| 09:20AM | 21 | paperwork.  We want to try to obtain any video.  If |
| 09:20AM | 22 | necessary, we can gather statements from the person who was |
| 09:20AM | 23 | the complainant.  We gather statements from witnesses, |
| 09:20AM | 24 | witness officers, civilian witnesses, use of force reports |
| 09:20AM | 25 | if they were completed, numerous other documents; just kind |

| | | |
|---|---|---|
| 09:20AM | 1 | of case dependent on what we can get.  We just try to get as |
| 09:20AM | 2 | much information to assist us with the case as possible. |
| 09:20AM | 3 | Q.  And do you interview witnesses? |
| 09:20AM | 4 | A.  Correct. |
| 09:20AM | 5 | Q.  Do you interview civilians? |
| 09:21AM | 6 | A.  Yes. |
| 09:21AM | 7 | Q.  And how about police officers? |
| 09:21AM | 8 | A.  Yes. |
| 09:21AM | 9 | Q.  On average, can you give us an estimate of how long the |
| 09:21AM | 10 | inquiry takes? |
| 09:21AM | 11 | MR. MANGO:  Objection, Judge. |
| 09:21AM | 12 | THE COURT:  Sustained. |
| 09:21AM | 13 | BY MR. ROMANO: |
| 09:21AM | 14 | Q.  At the end of the inquiry, does IAD make a determination? |
| 09:21AM | 15 | MR. MANGO:  Objection, Judge.  There's no relevance |
| 09:21AM | 16 | here. |
| 09:21AM | 17 | THE COURT:  Sustained. |
| 09:21AM | 18 | BY MR. ROMANO: |
| 09:21AM | 19 | Q.  Lieutenant Lloyd, does IAD make a conclusion at the end |
| 09:21AM | 20 | of its inquiry? |
| 09:21AM | 21 | MR. MANGO:  Objection.  That's same question, Judge. |
| 09:21AM | 22 | THE COURT:  Sustained. |
| 09:21AM | 23 | MR. MANGO:  Different words. |
| 09:21AM | 24 | MR. ROMANO:  May I just have a moment, Your Honor? |
| 09:21AM | 25 | THE COURT:  Yes, you may. |

09:22AM   1   BY MR. ROMANO:

09:22AM   2   Q.  Now on direct, Lieutenant, I think you gave some

09:22AM   3   testimony about your review of the IAD file in this case?

09:22AM   4   A.  Correct.

09:22AM   5   Q.  Do you recall if there was any use of force form from any

09:22AM   6   officer in connection with using pepper spray?

09:22AM   7   A.  I don't know.

09:22AM   8           MR. ROMANO:  No further questions, Your Honor.

09:22AM   9           MR. MANGO:  May I proceed, Judge?

09:23AM  10           THE COURT:  Yes.

09:23AM  11

09:23AM  12                        REDIRECT EXAMINATION

09:23AM  13

09:23AM  14   BY MR. MANGO:

09:23AM  15   Q.  Good morning.

09:23AM  16   A.  Good morning.

09:23AM  17           MR. MANGO:  Ms. Prawel, if we can bring up, please,

09:23AM  18   Defendant's Exhibit 117?

09:23AM  19   BY MR. MANGO:

09:23AM  20   Q.  Do you see that on your screen, Lieutenant?

09:23AM  21   A.  Yes.

09:23AM  22   Q.  Okay.

09:23AM  23           MR. MANGO:  Defense 118 -- well, actually, with this

09:23AM  24   one first up.

09:23AM  25

09:23AM    1    BY MR. MANGO:

09:23AM    2    Q.  Do you see this glass building way in the background and

09:23AM    3    do you know that to be Delaware North Company now?

09:23AM    4    A.  Yes.

09:23AM    5    Q.  Do you know if that was there in 2014?

09:23AM    6    A.  That was not there in 2014.

09:23AM    7            MR. MANGO:  Defense Exhibit 118, please?  Okay.

09:23AM    8    BY MR. MANGO:

09:23AM    9    Q.  Do you see that on your screen?

09:23AM    10   A.  Yes.

09:23AM    11   Q.  Okay.

09:23AM    12           MR. MANGO:  Defense Exhibit 119.

09:23AM    13   BY MR. MANGO:

09:23AM    14   Q.  Do you see that?

09:23AM    15   A.  Yes.

09:23AM    16   Q.  Okay.

09:23AM    17           MR. MANGO:  And Defense Exhibit 120.

09:23AM    18   BY MR. MANGO:

09:24AM    19   Q.  All those photographs you see that on your screen, too?

09:24AM    20   A.  Correct.

09:24AM    21   Q.  All those photographs, were those taken during the

09:24AM    22   daytime or the nighttime?

09:24AM    23   A.  They appear to be during the day.

09:24AM    24   Q.  Do you know if the incident between the defendant and

09:24AM    25   Devin Ford occurred in the daytime or the nighttime?

09:24AM   1          MR. ROMANO:  Objection, Your Honor.  I would just

09:24AM   2   object to leading.

09:24AM   3          THE COURT:  It's not leading.  He asked him if it was

09:24AM   4   daytime or nighttime.  The answer is yes and the answer is no.

09:24AM   5          THE WITNESS:  The incident happened at nighttime.

09:24AM   6          MR. MANGO:  Thank you.

09:24AM   7   BY MR. MANGO:

09:24AM   8   Q.  For the detail that you worked on Thanksgiving Eve,

09:24AM   9   Buffalo Police Officers get overtime pay for that, is that

09:24AM  10   right?

09:24AM  11          MR. ROMANO:  Objection.  Relevance.

09:24AM  12          THE COURT:  Overruled.

09:24AM  13          THE WITNESS:  Yes, they do.

09:24AM  14   BY MR. MANGO:

09:24AM  15   Q.  Now, you mentioned when some uses of force that are

09:25AM  16   not -- do not trigger a use of force form that needs to be

09:25AM  17   filed.  And I think you used sort of -- like, crowd control

09:25AM  18   was your example on cross-examination?

09:25AM  19   A.  Yes.

09:25AM  20   Q.  And I think you mentioned -- or you used the term no

09:25AM  21   identifiable target, is that right?

09:25AM  22   A.  Yes.

09:25AM  23   Q.  You were also asked some questions about an arrest and if

09:25AM  24   an arrest is not made, that it makes the completion of the

09:25AM  25   use of force form more difficult to complete, is that right?

09:25AM    1    A.  Correct.

09:25AM    2    Q.  That doesn't mean you still don't do it, is that right?

09:25AM    3          MR. ROMANO:  Objection.

09:25AM    4          THE COURT:  Rephrase your question.

09:25AM    5    BY MR. MANGO:

09:25AM    6    Q.  If there still is a reportable use of force against

09:25AM    7    someone who is not arrested, the fact that the person is not

09:25AM    8    arrested, does that exempt the officer from doing a use of

09:25AM    9    force form?

09:26AM   10          MR. ROMANO:  Objection.

09:26AM   11          THE COURT:  Overruled.

09:26AM   12          THE WITNESS:  No, it does not.

09:26AM   13    BY MR. MANGO:

09:26AM   14    Q.  And would it -- would no use of force form make it more

09:26AM   15    difficult for that officer's chain of command to be aware of

09:26AM   16    the use of force that was used?

09:26AM   17          MR. ROMANO:  Objection.  Speculation.

09:26AM   18          THE COURT:  Sustained.

09:26AM   19          MR. MANGO:  Nothing further, Judge.  Thank you.

09:26AM   20          THE COURT:  Thank you.  Thank you, sir.

09:26AM   21          THE WITNESS:  Thank you, sir.

          22    (The witness was excused at 9:26 a.m.)

          23

          24

          25

1                    *     *     *     *     *     *     *

2

3              I certify that the foregoing is a

4       correct transcription of the proceedings

5       recorded by me in this matter.

6

7

8

9                          s/ Megan E. Pelka, RPR

10                         Court Reporter,

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25